7 A.3d 56

**Eduardo Escobar MARTINEZ**

**v.**

**STATE of Maryland.**

**No. 67, Sept. Term, 2009.**

Court of Appeals of Maryland.

Oct. 26, 2010.

---

Piedad Gomez, Assistant Public Defender (Elizabeth L. Julian, Acting Public Defender, Baltimore), on the brief, for petitioner.

James E. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., Maryland), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

Petitioner Eduardo Escobar Martinez was tried before a jury in the Circuit Court for Prince George's County and convicted of involuntary manslaughter of one victim and attempted murder of another. During trial, the court prohibited Petitioner from cross-examining the surviving victim about his potential bias in connection with the State's dismissal of unrelated charges filed against him and his incarceration status pursuant to a writ of body attachment to secure his presence at trial. The Court of Special Appeals held that it was not an abuse of the court's discretion to prohibit such cross-examination. For the reasons that follow, we hold that the Circuit Court erred in barring Petitioner from attempting to impeach the victim witness on matters that could demonstrate the witness's bias. We therefore reverse the judgment of the Court of Special Appeals and remand the case to that court with directions to order a new trial.

## I.

During the early morning hours of September 9, 2006, police officers in Prince George's County found two men, Carlos Humberto Castro–Ventura and Santos Lorenzo Mejicanos, lying on the ground and suffering from multiple stab wounds. Mr. Castro–Ventura later died as a result of those wounds. Mr. Mejicanos, however, survived the attack.

Prince George's County Detective Troy Harding was the lead detective in the investigation of the stabbings. Detective Harding testified that he visited Mejicanos at the hospital on September 12 and 13, 2006. Detective Harding showed Mejicanos a photographic array of potential suspects. The array included a photograph of Petitioner. Mejicanos identified Petitioner as the person who had stabbed him. Detective Harding also showed Mejicanos a photograph of a crucifix tattoo. Mejicanos identified that tattoo as the same as a tattoo he had observed on the arm of one of his assailants, during the attack. Roberto Nicolas, known to Detective Harding as a potential suspect in the attacks, has such a tattoo.

Detective Harding obtained a warrant to search the residence of Nicolas. Two screwdrivers believed to be used in the attack were recovered. Subsequent testing disclosed the presence of Nicolas's DNA on one of the screwdrivers, but no DNA of Petitioner, or anyone else, on the other screwdriver.

The police arrested Nicolas. During interrogation, Nicolas implicated several persons, including Petitioner, in the stabbings. He stated that Petitioner, in the course of the stabbings, used one of the screwdrivers that were recovered from Nicolas's residence.

Petitioner was charged in the Circuit Court for Prince George's County with the murder of Mr. Castro–Ventura, the attempted murder of Mr. Mejicanos, two counts of conspiracy to commit those murders, and related counts. Nicolas and Mejicanos were the State's key witnesses at trial.

Nicolas testified to the following. On the evening of September 8, 2006, he, Petitioner, Carlos Garcia, and William Mercado went to a park to drink beer. Around midnight, they

made their way to nearby apartments. Along the way, they observed three individuals walking in their direction. When the two groups met, Nicolas observed Petitioner and one of the members of the other group, later identified as Mejicanos, exchange angry words. Nicolas, a self-described MS–13 gang member, approached and punched Mejicanos in the face. Nicolas was prompted to do that because Mejicanos, who claimed to be a MS–13 gang member, smoked crack-cocaine in violation of gang rules.[1]

Nicolas further testified that Mejicanos attempted to run away, but Petitioner, Garcia, and Mercado overtook and attacked him. When Mejicanos fell to the ground, Petitioner began stabbing him with a screwdriver. The attackers were momentarily distracted by neighbors' screams and Mejicanos was able to escape. Moments later, Petitioner, Garcia, and Mercado began assaulting Mr. Castro–Ventura. During the assault, Petitioner repeatedly stabbed Castro–Ventura with a screwdriver. As the fight ended, Nicolas kicked Castro–Ventura and left him bleeding on the ground. The group then left the scene and went to Rock Creek, where Nicolas observed Petitioner cleaning the screwdriver in a creek.

A medical examiner testified that Mr. Castro–Ventura died as a result of forty-four stab wounds. The medical examiner also testified that a small rectangular object, such as a screwdriver, caused those injuries.

The surviving victim, Mejicanos, testified as a State's witness, under a writ of body attachment to secure his presence at trial after he failed to attend court on the first day of trial. The record reflects that Mejicanos was incarcerated from sometime on the second day of trial until the third day of trial, when he gave his testimony.[2] Just before Mejicanos took the

---

**1.** Nicolas did not identify the person he punched as Mejicanos. A reading of the record, however, indicates that the person whom Nicolas punched was in fact Mejicanos. Mejicanos denied MS–13 membership during his testimony at trial.

**2.** Near the close of the second day of trial, the State informed the court that, earlier that day, he visited Mejicanos "downstairs" (presumably,

stand, defense counsel asked the court for permission to ask Mejicanos about his unrelated charges of felony theft, unauthorized use of a vehicle, and possession of drug paraphernalia. Those charges, filed in the Circuit Court for Prince George's County, were *nolle prossed* by the State six days before Mejicanos testified at a pre-trial motions hearing in the present case. We set forth the relevant portions of the exchange among the court, the State, and defense counsel regarding the *nolle prossed* charges:

> [DEFENSE COUNSEL]: Mejicanos had a Circuit court case that was pending. . . . It was a theft, UUV [i.e., unauthorized use of a vehicle] for taking another vehicle, and possession of paraphernalia. It was scheduled for a motion on May 4th. Motions were withdrawn. It was set for trial on June 7. Prior to the June 7 trial . . . it was entered nolle prosequi. I would like to inquire of Mejicanos if he knows if the entering of that case nolle prosequi prior to his motions testimony and his trial testimony in this case affected his bias. To ask him if he was more inclined to testify in accordance with the State's theory of the case, because he got another Circuit Court case dropped against him.
>
> [THE COURT]: Are you implying that there was some kind of plea agreement?
>
> [DEFENSE COUNSEL]: No, I don't think it was, maybe I'm wrong, and I'm sure Mr. State will correct me if I'm wrong, but it's more a matter of bias than if it is a plea agreement. I think bias could be used to show an individual's bias.
>
> \* \* \*
>
> [THE STATE]: Your Honor, Mejicanos testified at the motions hearing that he had identified this defendant as the one that stabbed him. There was no agreement with the

---

in lockup) and observed that Mejicanos appeared at that time to be "coming off of some kind of substance." The State asked the court to "excuse the jury and give [Mejicanos] another day to get over whatever is in his system before he comes and testifies." The court granted the State's request.

State that the State would drop the case if he came to court or if he testified. He's going to testify truthfully that he had identified this defendant prior to the State even speaking with him. He hasn't been convicted. The case was dismissed for whatever reason. The defense should not be allowed to inquire as to whether—[to] try to impeach him with a plea through the back door as to raise the issue as to raise the fact that he was arrested in a stolen car and that he had or that he was charged with, among other things, the paraphernalia count.

\* \* \*

[DEFENSE COUNSEL]: We believe that under [Rule] 5–616(a)(4) [3] that we should be permitted to inquire about the nol[le] pros[s]ed case to prove that the witness is biased. Or as an alternative ground, if I can have the court's indulgence. That will be [Rule] 5–608(b) [4], impeachment by examination regarding a witness's own prior conduct not resulting in convictions. . . .

Upon introduction the court may permit the inquiry to the questioner outside of the presence of the jury [to establish] a reasonable factual basis to show that the conduct of the witness occurred. The conduct may not be proved by extrinsic evidence. And I think the good faith basis is the fact that he was charged in a felony indictment and that he

---

**3.** Maryland Rule 5–616(a)(4) provides: "The credibility of a witness may be attacked through questions asked of the witness, including questions that are directed at [p]roving that the witness is biased, prejudiced, interested in the outcome of the proceeding, or has a motive to testify falsely."

**4.** Maryland Rule 5–608(b) provides: "The court may permit any witness to be examined regarding the witness's own prior conduct that did not result in a conviction but that the court finds probative of a character trait of untruthfulness. Upon objection, however, the court may permit the inquiry only if the questioner, outside the hearing of the jury, establishes a reasonable factual basis for asserting that the conduct of the witness occurred. The conduct may not be proved by extrinsic evidence."

was incarcerated on January 2nd of this year until May 11 of this year on that theft. . . .

\* \* \*

[THE STATE]: [In response] . . . I would argue that there's . . . nothing to indicate that there's anything probative of character trait under 5–608(b). That's all.

[THE COURT]: Okay. The defense has asked the court whether it may make inquiries of Mejicanos pertaining to a theft charge. . . .

As the court reviews the statement of charges, it is alleged to relate to an incident where members of law enforcement stop a vehicle on or about January 2, 2007. The vehicle was not operated by Mr. Mejicanos. It was operated by a female individual. Mejicanos was a passenger in that particular vehicle. Counsel has invited the court's attention to two [rules].

The court recited the text of Rules 5–616(a)(4), 5–608(b) and 5–403,[5] then stated:

[THE COURT]: It has been advanced by defense counsel that the charges that she wishes to elude [sic] to during the course of her cross examination of Mejicanos were nol[le] pros[s]ed by the State's Attorney's Office on or about May 10, 2007. And the court notes that a motions hearing in the instant case occurred on May 16, 2007. So the court is putting that on the record for purposes of its consideration of the request.

The court upon consideration of the arguments presented and the rules mentioned, at this time denies the request under Maryland Rules 5–403.

During direct examination, Mejicanos corroborated Nicolas's testimony and identified Petitioner as the individual who

---

**5.** Maryland Rule 5–403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

stabbed him. Following direct examination, a bench conference produced the following exchange among the court and counsel:

[DEFENSE COUNSEL]: The State did not bring out that Mejicanos is currently incarcerated. I would ask the court to inquire about that. Also under 5–616, because the State holds the key to his release and if he says what they like, he understands that he's going to be released so I think that that would also come under 5–616.

[THE COURT]: Actually the State does not hold that key, the court holds that key.

[THE STATE]: Thank you.

[DEFENSE COUNSEL]: The State will ask him to be released—

[THE COURT]: Uh-huh.

[DEFENSE COUNSEL]:—pursuant to the warrant.

[THE COURT]: Uh-huh.

[DEFENSE COUNSEL]: What really matters is what Mejicanos thinks. If he thinks the prosecutor's office is going to let him go, it makes him want to say what they want him to say. He knows that it was the prosecutor who asked that he be locked up and he thinks that it's the prosecutor whose [sic] going to let him out. It's under 5–616.

[THE COURT]: Same subsection?

[DEFENSE COUNSEL]: Yes, Your Honor.

[THE COURT]: Request is denied.

Consistent with the trial court's ruling, defense counsel refrained from cross-examining Mejicanos about either his custody status or the *nolle prossed* charges.

At the close of the State's case, defense counsel moved for judgment of acquittal on all counts, and the trial court granted the motion on the two counts of conspiracy to commit murder. The remaining charges went to the jury. The jury found Petitioner guilty of involuntary manslaughter and first-degree assault of Mr. Carlos–Ventura and attempted second-degree

murder and first-degree assault of Mr. Mejicanos. The court sentenced Petitioner to a total of forty years' imprisonment.

On appeal to the Court of Special Appeals, Petitioner argued, inter alia, that the trial court violated his right of confrontation with respect to Mejicanos, by preventing Petitioner from cross-examining him about matters with the potential to affect his "bias, interests, and motive to lie." Petitioner specified that he should have been permitted to expose that Mejicanos's testimony could have been biased in favor of the State as the result of the facts that the State had *nolle prossed* unrelated charges against Mejicanos six days before Mejicanos testified at the pretrial hearing, and that, at the time of his trial testimony, Mejicanos was in custody on a writ of body attachment. The State countered that, under Maryland Rule 5–403, the trial court properly exercised its discretion to limit that line of cross-examination because any probative value of the proposed impeachment was outweighed by the potential to mislead and confuse the jury. The Court of Special Appeals, in an unreported opinion, agreed with the State, holding that the Circuit Court did not abuse its discretion in ruling that the probative value of the proposed inquiries was outweighed by other concerns expressed in Maryland Rule 5–403.

Petitioner filed a petition for a writ of certiorari, which we granted, *Martinez v. State,* 409 Md. 47, 972 A.2d 861 (2009), to consider the following question:

> Did the lower courts apply an erroneous legal standard to determine that Petitioner could not inquire about a key witness's expectation of leniency, where the State had dismissed the witness's charges of felony theft and unauthorized use of a motor vehicle and his appearance at trial was secured by a body attachment? [6]

---

**6.** We reject the State's contention that this precise question was not raised before the trial court or the Court of Special Appeals and thus is not preserved.

## II.

 The Confrontation Clause of the Sixth Amendment of the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee a criminal defendant the right to confront the witnesses against him. *Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Church v. State,* 408 Md. 650, 663, 971 A.2d 280, 288 (2009). The right of confrontation includes the opportunity to cross-examine witnesses about matters relating to their biases, interests, or motives to testify falsely. *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Marshall v. State,* 346 Md. 186, 192, 695 A.2d 184, 187 (1997).

 The ability to cross-examine witnesses, however, is not unrestricted. *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. 1431; *Smallwood v. State,* 320 Md. 300, 307, 577 A.2d 356, 359 (1990). A trial court may impose reasonable limits on cross-examination when necessary for witness safety or to prevent harassment, prejudice, confusion of the issues, and inquiry that is repetitive or only marginally relevant. *Lyba v. State,* 321 Md. 564, 570, 583 A.2d 1033, 1036 (1991). The court, nevertheless, "must allow a defendant wide latitude to cross-examine a witness as to bias or prejudices" so long as the questioning does not "obscure the trial issues and lead to the factfinder's confusion." *Smallwood,* 320 Md. at 307–08, 577 A.2d at 359 (citations omitted). Only when defense counsel has been "permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness[,]" is the right of confrontation satisfied. *Davis,* 415 U.S. at 318, 94 S.Ct. 1105. Consequently, a trial court may exercise its discretion to limit cross-examination only after the defendant has been afforded the " 'constitutionally required threshold level of inquiry.' " *Smallwood,* 320 Md. at 307, 577 A.2d at 359 (quoting *Brown v. State,* 74 Md.App. 414, 419, 538 A.2d 317, 319 (1988)).

Our recent decision in *Calloway v. State,* 414 Md. 616, 996 A.2d 869 (2010), informs the resolution of the present case.[7] In *Calloway,* we held that the trial court committed reversible error when it prohibited the defense from cross-examining a State's witness, who was incarcerated for unrelated offenses pending trial, concerning whether the witness had volunteered to testify for the State with the hope that he would receive some benefit in those cases then pending against him. *Id.* at 619–20, 996 A.2d at 870–71. The defense had learned that, before Calloway's trial, the witness was released from the Montgomery County Correctional Facility; charges that had been pending against the witness were *nolle prossed;* and, notwithstanding unequivocal evidence that the witness had violated probation in another case, no violation of probation charge was filed against him. We characterized the effect of the trial court's ruling as having "excluded circumstantial evidence of [the witness's] self interest that was based upon what actually occurred before he was called to testify against" Calloway. *Id.* at 636–37, 996 A.2d at 880. We concluded that whether the witness had stepped forward with information that implicated Calloway "in the hope of being released from detention, and whether he was testifying at trial in the hope of avoiding a violation of probation charge, should have been decided by the jury[.]" *Id.* at 637, 996 A.2d at 880.

We clarified, moreover, that, "[b]ecause the issue is whether [the witness] had a hope that he would benefit from volunteering to testify against [Calloway], it is of no consequence that the State had not offered to make any deal or bargain with [the witness] regarding his charges and his testimony in [Calloway's] case." *Id.* at 637, 996 A.2d at 880–81 (internal quotation marks omitted). Nor was it of consequence that the witness might not have admitted under cross-examination that

---

7. The State's reliance in the present case on *Ebb v. State,* 341 Md. 578, 671 A.2d 974 (1996), and *Watkins v. State,* 328 Md. 95, 613 A.2d 379 (1992), is undermined by our overruling those cases in *Calloway,* subsequent to the filing of the State's brief here. *See Calloway,* 414 Md. at 638, 996 A.2d at 881.

his direct testimony was motivated by self interest. We explained, in that regard:

"Questions alone *can* impeach. Apart from their mere wording, through voice inflections and other mannerisms of the examiner—things that cannot be discerned from the printed record—they can insinuate; they can suggest; they can accuse; they can create an aura in the courtroom that the trial judge can sense but about which we could not speculate. The most persistent denials, even from articulate adult witnesses, may not suffice to overcome the suspicion they can engender...."

*Id.* at 638, 996 A.2d at 881 (quoting *Elmer v. State,* 353 Md. 1, 15, 724 A.2d 625, 632 (1999) (additional quotation marks and citations omitted)).

We "agree[d] with and adopt[ed]" the following statements from *Leeks v. State,* 110 Md.App. 543, 557–58, 678 A.2d 80, 87 (1996):

"The issue of bias is often generated by circumstantial evidence, and does not disappear merely because the witness denies any reason to be biased. If such circumstantial evidence exists, *the trier of fact is entitled to observe the witness's demeanor as he or she responds to questions permitted by Rule 5–616(a)(4).*

When the trier of fact is a jury, questions permitted by Rule 5–616(a) should be prohibited only if (1) there is no factual foundation for such an inquiry in the presence of the jury, or (2) the probative value of such an inquiry is **substantially** outweighed by the danger of undue prejudice or confusion."

*Calloway,* 414 Md. at 638, 996 A.2d at 881 (emphasis added in *Calloway* ). We added that, "[w]hen determining whether a particular item of circumstantial 'bias' evidence should be excluded on the ground that it is unfairly prejudicial and/or confusing, the trial court is entitled to consider whether the witness's self interest can be established by other items of evidence." *Id.,* 996 A.2d at 881. Applying the above-quoted principles, we held that "there was a solid factual foundation for an inquiry into [the witness's] self interest, and the circumstantial evidence of [the witness's] self interest was not out-

weighed—*substantially* or otherwise—by the danger of confusion and/or *unfair* prejudice to the State." *Id.* at 639, 996 A.2d at 881–82.

■ Application to the present case of the reasoning and holding of *Calloway* requires reversal of Petitioner's convictions. The facts that a mere six days before Mejicanos testified at the motions hearing in this case, the State *nolle prossed* charges that had been pending against him, and that he was incarcerated pursuant to a writ of body attachment pending his testimony, presented circumstantial evidence of bias, motivated by self-interest. It matters not whether the *nolle prossed* charges were the result of a deal with the State, or that the court, not the State, held the keys to Mejicanos's release from the body attachment at the conclusion of his testimony; it matters only what Mejicanos might have thought about those two facts. When a defendant seeks to cross-examine a State's witness to show bias or motive, "the crux of the inquiry insofar as its relevance is concerned, is the witness's state of mind." *Smallwood,* 320 Md. at 309, 577 A.2d at 360 (quoting *Brown,* 74 Md.App. at 421, 538 A.2d at 320); *accord Calloway,* 414 Md. at 636–38, 996 A.2d at 880–81; *see also Hoover v. State,* 714 F.2d 301, 305 (4th Cir.1983) ("The vital question ... is what the *witness* understands he or she will receive" because the "likelihood that a prosecution witness is shading or even contriving testimony adverse to the defendant reasonably can be viewed as directly correlated with the perceived value of such testimony to the witness.").

In short, there was a solid factual foundation for the defense's inquiry into Mejicanos's potential bias. Moreover, such inquiry was not outweighed at all, much less *substantially* so, by the danger of confusion to the jury or unfair prejudice to the State. *See Calloway,* 414 Md. at 638–39, 996 A.2d at 881–82. On one side of the balance, circumstantial evidence that Mejicanos, a key State's witness, was motivated by self-interest to testify falsely was highly probative of the defense's theory that his testimony was not to be trusted.[8] On

---

8. In closing, the State argued the following with respect to Mejicanos's credibility: (1) "Mr. Mejicanos's identification to Officer Ordono, as

the other side of the balance, the State did not even suggest at trial that the defense's inquiry would confuse the jury or would unfairly prejudice the State, much less substantially so.

We hold that the trial court's ruling prevented the jury from considering the possibility that Mejicanos had a motive to testify as he did, resulting in a violation of Petitioner's right of confrontation guaranteed by the United States and Maryland constitutions. The error entitles Petitioner to a new trial.[9]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

---

well as the court identification is very strong. You can see how he acted. You remember how he sat in this chair, relaying in Spanish as to what that person did." (2) "Mejicanos sat here and continuously pointed at that defendant and told you in details that he knew exactly what happened to him that night. Do not ignore. Do not waste his courage." The court's ruling foreclosed all opportunity for the defense to rely on evidence of this key witness's bias to counter that aspect of the State's closing argument.

**9.** The State did not argue that the trial court's error was harmless. As such, we need not, and will not, undertake a review of the record to decide that issue.