REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 1690, and 1701, 2071

September Term, 2015

_____

MICHAEL WILLIAM HALL,
TYWAN JAMAD CUMMINGS,
DAQUAWN LUBIN
v.

STATE OF MARYLAND

_____

Kehoe,
Nazarian,
Shaw Geter,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed:  June 28, 2017

Michael Hall, Tywan Cummings, and Daquawn Lubin were tried together and convicted in the Circuit Court for Prince George's County of first-degree burglary, first-degree assault, use of a firearm in a crime of violence, and related offenses. All three challenge a variety of the court's evidentiary decisions; Mr. Hall also contends that the trial court erred by failing to merge multiple convictions for conspiracy and denying his motion for mistrial, and Messrs. Cummings and Lubin argue that the evidence was insufficient to support their convictions. We hold that the trial court erred when it precluded defense counsel from introducing Raymond Clark's prior manslaughter conviction for impeachment purposes and in prohibiting the defense from cross-examining Mr. Clark and another witness about the conviction and their possible motives to lie. And after determining that the evidence was sufficient to convict Messrs. Cummings and Lubin, we reverse and remand for further proceedings.

## I. BACKGROUND

On March 28, 2015, Janise Ray and Mr. Clark returned by car to their home in the Shady Side Garden Apartment Complex. They were arguing on the drive and arrived around 7:00 PM. Mr. Clark got out of the car first and headed to the apartment. Ms. Ray stayed behind.

Several minutes later, Ms. Ray gathered all of the items in the car—including her purse, a pizza, a two-liter bottle of soda, and a brown bag that had been behind the passenger seat—and walked to the apartment. Along the way, she saw two men sitting on a bench, one of whom got up and walked in front of her toward her building. The other

man got up and walked behind her, and then both men went down the stairs to the lower-level apartments while Ms. Ray walked up the stairs toward hers.

When she got to top of the stairs, Ms. Ray turned around and saw the two men standing behind her. They wore black ski masks and held guns. The men motioned toward the door with the guns and told Ms. Ray to go inside. As one of them opened the door, the other pushed her inside and onto the couch. Ms. Ray screamed for Mr. Clark and curled up in a ball.

Mr. Clark heard Ms. Ray's screams and ran into the living room, where he saw several masked men brandishing guns. Mr. Clark grabbed one of the men's arms and the two struggled over the gun, and Mr. Clark ultimately wrestled it away. Gunfire was exchanged, and one man (later identified as Dexter Manigault) was shot and fell to the ground. Mr. Manigault got back up, and he and the others made their way out the door as more shots flew. Police later recovered twenty shell casings from the apartment, as well as the gun that Mr. Clark claimed that he had taken from one of the attackers.

Mr. Manigault was badly wounded from the gunfire, and he fell to the ground in the apartment complex's courtyard. Krystal Moon, a volunteer emergency medical technician who lived nearby, offered to render first aid and called 911. But the men ignored her offer and instead carried Mr. Manigault to a black SUV, loaded him in the backseat, and drove to a nearby fire station. They also dropped Mr. Cummings off at his home on the way. Once at the fire station, the men got out of the vehicle, and one yelled that "there was a guy shot from an attempted robbery." Mr. Lubin fled and was later apprehended by police.

2

Mr. Manigault succumbed to his gunshot wounds. The other three, Messrs. Cummings, Lubin, and Hall, were arrested and tried together.

At trial, Mr. Hall testified on his own behalf and Mr. Clark testified for the State. Mr. Hall testified that there was no attempted robbery, but that he and the other men went to the apartment complex to buy drugs from Mr. Clark, whom Mr. Manigault knew but the others did not. Mr. Clark was upset because Mr. Manigault had brought a stranger to his house, but Mr. Manigault "vouched" for Mr. Hall, and the three of them went inside to complete the drug transaction. The situation soured, though, when they made the exchange. Mr. Manigault gave Mr. Clark $1,200, $800 of which was counterfeit; in return, Mr. Clark handed Mr. Manigault a brown paper bag that he slid into the waistband of his pants. As Mr. Clark began counting the money, he realized some of it was counterfeit and started shooting. Mr. Manigault fell to the ground and fired back, and Mr. Hall began to run. But after realizing that Mr. Manigault was on the ground, Mr. Hall returned to help Mr. Manigault walk; this effort ultimately failed because Mr. Manigault was too badly wounded. Mr. Hall returned to the SUV and asked Mr. Lubin to help him carry Mr. Manigault to the vehicle. They then drove to a nearby fire station to get medical aid for Mr. Manigault, but stopped before arriving to let Mr. Cummings out.

Before Mr. Clark testified, the State moved *in limine* to preclude the defense from impeaching him with his prior manslaughter conviction. Mr. Hall's attorney argued that the conviction was relevant for impeachment and for evidence of motive to fabricate a false story because Mr. Clark's conviction prohibited him from possessing a gun, and thus Mr. Clark had a motive to lie about the provenance of the guns involved in the incident. The

3

court ruled that the conviction could not be used for impeachment because it was not an infamous crime and did not bear on Mr. Clark's credibility, and directed the defense to approach the bench before asking about it. As Mr. Hall's counsel prepared to ask Ms. Ray whether she knew that Mr. Clark was prohibited from possessing a gun, he asked to approach the bench and was told by the court that he could only ask Ms. Ray whether Mr. Clark had a gun, not whether she knew he was prohibited from having one. Later, when cross-examining Mr. Clark, Mr. Hall's attorney attempted to question him about the fact that he was prohibited from possessing a gun, and the court precluded any questions on the subject. At the conclusion of the jury trial, all three defendants were found guilty. This timely appeal followed.

## II. DISCUSSION

Some of the contentions in this consolidated appeal overlap and others are unique to each individual.[1] Messrs. Cummings and Lubin contend that the trial court erred by

---

[1] Mr. Hall phrased his Questions Presented as follows:
> I. Whether the trial court erred by admitting evidence of Appellant's pre-arrest silence to impeach his testimony?
> II. Whether the trial court erred in refusing to permit Appellant to cross-examine Raymond Clark and Janise Ray, two central prosecution witnesses, on their common motive to testify falsely?
> III. Whether the trial court erred in refusing to give Appellant's requested jury instruction on self defense?
> IV. Whether the trial court erred in failing to merge multiple convictions for conspiracy when the State only offered proof of a single conspiracy?
> V. Whether the trial court erred in denying Appellant's motion for a mistrial?

Mr. Cummings's Questions Presented were:

4

prohibiting the defense from using Mr. Clark's prior conviction for manslaughter for impeachment. Messrs. Hall and Cummings contend that the trial court erred in prohibiting their attorneys from cross-examining Ms. Ray and Mr. Clark about their common motive to provide false testimony. Mr. Hall contends separately that the trial court erred in permitting the State to cross-examine him about his pre-arrest silence, refusing to give a requested self-defense jury instruction, failing to merge multiple convictions for conspiracy when the State only offered proof of a single conspiracy, and denying his motion for mistrial. Mr. Lubin contends that the trial court erred by sentencing him for an offense for which he was not convicted and complains as well that the evidence was not sufficient to sustain his conviction. And Mr. Cummings contends that the evidence was

---

1. Did the trial court err by prohibiting the defense from using Raymond Clark's manslaughter conviction for impeachment purposes under Maryland Rule 5-609?
2. Did the trial court err by curtailing the defense's ability to cross examine Janise Ray and Raymond Clark as to their motive to fabricate the source of the handgun recovered in their residence?
3. Was the evidence sufficient to sustain the convictions?

Mr. Lubin's Questions Presented were:
1. Was it error to rule, as a matter of law, that complainant Raymond Clark could not be impeached on defense cross-examination with a prior conviction for manslaughter, because "it is neither an infamous crime, nor a crime that would bear on credibility," and "the law does not allow it"?
2. Was Appellant sentenced for an offense of which he was not convicted?
3. Was the evidence sufficient to sustain the convictions?

5

not sufficient to sustain his conviction. As it turns out, we don't need to address all of these contentions.

**A.     The Trial Court Erred When It Precluded The Defense From Impeaching Mr. Clark's Credibility With His Manslaughter Conviction.**

All three appellants contend, in slightly different ways, that the trial court erred by precluding them from introducing Mr. Clark's prior manslaughter conviction for impeachment purposes. The State doesn't dispute that the court erred in the way it characterized the conviction, but counters that the issue is not preserved because Messrs. Cummings and Lubin never joined in Mr. Hall's preliminary attempt to introduce the conviction, nor did they object to the court's ruling to exclude it. We hold that the issue is preserved because the trial court's categorical declaration that manslaughter is not an impeachable offense served as a final ruling on the matter and that the error compels us to reverse the convictions.

**1.     The defense preserved its objections.**

Before Ms. Ray was cross-examined by the defense, and before Mr. Clark testified, the State moved *in limine* to exclude any reference to Mr. Clark's prior manslaughter conviction. The State argued that the conviction should not be admitted into evidence because it was not an impeachable offense, and the court agreed:

> [THE STATE]: I know there is a prior conviction but not impeachable.
>
> THE COURT: What is the prior conviction?
>
> [THE STATE]: Manslaughter.

6

THE COURT: I think everyone probably is in agreement. If they ask something that you feel is inappropriate, just object.

[THE STATE]: Yes. I'm addressing it now because I would like to try to avoid the jury even hearing it.

[MR. HALL'S COUNSEL]: I do think in a way it is relevant in that -- I think some of the evidence will show, it is *our* theory that Mr. Clark actually had a firearm there that evening. He is prohibited from possessing a firearm because of the prior conviction. So to the extent that is -- that was the point I was going to try to make as a motive to lie about the firearm.

THE COURT: Even assuming all that is true, and I do. That is neither an infamous crime, nor a crime that would bear on credibility. The law says you can't do it. There is nothing inherently evil or wrong about it.

[MR. HALL'S COUNSEL]: *Our position* is that is why they are not saying that he used his weapon that evening. That is why they are making up this version of events to avoid responsibility for him admitting to having a firearm.

[THE STATE]: Again, I think that any mention of a prior conviction that is not a crime that goes towards moral turpitude or would be relevant for purposes of determining [credibility] should be prohibited. They should be prevented from mentioning it.

THE COURT: [Mr. Hall's counsel], if you feel it is relevant, if you decide you will inquire. Obviously you wouldn't be inquiring of this witness, would you, Ms. Ray?

[MR. HALL'S COUNSEL]: To the extent that I did think they are agreeing to make up a version of events. She, obviously, knows him and has known him for some time.

[THE COURT]: Ask to approach the bench before you ask any questions and I will rule, okay?

[MR. HALL'S COUNSEL]: Okay.

(Emphases added.)

After the discussion of Mr. Clark's prior conviction, the State re-called Ms. Ray. Mr. Hall's counsel was the first on the defense side to cross-examine her, and, as instructed by the court, asked to approach the bench before asking about Ms. Ray's knowledge of Mr. Clark's prior conviction or his right to possess a gun:

> [THE COURT]: What do you want to ask?
>
> [MR. HALL'S COUNSEL]: Yeah.
>
> [THE COURT]: I think you can ask did he have a gun.
>
> [MR. HALL'S COUNSEL]: Okay.
>
> [THE COURT]: Assuming she says, no, what is your follow-up?
>
> [MR. HALL'S COUNSEL]: My follow-up would be that she knew that he is not allowed to have a gun.
>
> [THE STATE]: Objection. I mean whether she has knowledge of --
>
> [THE COURT]: I mean the first question is fine. I think anything further is really pushing it. [I]t is sort of like why didn't he have a gun, which is never really a relevant question. The issue is did he or didn't he.
>
> [MR. HALL'S COUNSEL]: She is saying he did not have a gun in order to protect him from further prosecution.
>
> [THE STATE]: I don't see how it goes to either the relevancy --
>
> THE COURT: I don't see how -- she hasn't said anything about him taking a gun from one of the others, or using a gun, or what gun he used, so I will sustain it. You can ask did he have a gun in the house. She already said to her knowledge, no. Other then [sic] that there is no evidence what weapon he used to fire back.

8

[MR. HALL'S COUNSEL]: I think that it will come out later.

THE COURT: I will sustain anything beyond that.

When Mr. Clark testified, Mr. Hall's counsel also attempted to cross-examine him about the fact that the prior conviction prohibited him from possessing a gun, and Mr. Lubin's counsel attempted to explain the conviction's relevance, but the court again prohibited any questions on the subject:

> [MR. HALL'S COUNSEL]: At this point I was going to ask him about whether or not he knew at the time that he was prohibited from owning a firearm.
>
> [THE STATE]: The State is objecting to that.
>
> * * *
>
> THE COURT: Is there any evidence he possessed a gun other than he had it in his hand and was shooting?
>
> [MR. HALL'S COUNSEL]: Not yet.
>
> THE COURT: You are saying that that is the possession?
>
> [MR. HALL'S COUNSEL]: That is the possession. There may be some later.
>
> [MR. LUBIN'S COUNSEL]: If I may? I think the relevance here is if he had a gun in fact he would lie about it because he knows he is a felon in possession of a gun.
>
> THE COURT: That is like saying if there was another body in the closet he would lie about that, too. There has to be some tiny scintilla of evidence. If he had a stash of dynamite hidden in the -- you can ask him if he knows it is illegal that he had dynamite. If you are saying when he took that gun off the guy.
>
> [MR. HALL'S COUNSEL]: I'm saying he had the gun beforehand.

9

> THE COURT: I think you can ask him if he had a gun or not, but that's it.
>
> [MR. HALL'S COUNSEL]: Okay.

The State argues that the issue is not preserved for appeal because the defense did not attempt to introduce Mr. Clark's prior conviction at the relevant time. Although it is a close call, we disagree. The court ruled categorically that "[manslaughter] is neither an infamous crime, nor a crime that would bear on credibility. The law says you can't [introduce] it" and then prohibited Mr. Hall altogether from cross-examining Ms. Ray and Mr. Clark about their knowledge of the conviction or whether they knew that Mr. Clark was prohibited from possessing a gun. The State contends that the defense was required to offer the evidence again or object further to the court's ruling, but there would have been no point—the court's ruling flowed from its all-or-nothing view that the manslaughter conviction was not fair game for cross.

The State is right that an objection normally is expected each time the excluded evidence would be offered. But that principle is meant to guard against contextual sandbagging, to allow the trial court an opportunity to consider whether the evidence offered and testimony elicited since an earlier ruling supports its decision or compels a change. In this instance, no testimony or evidence could have altered the court's ruling or the context in which the court made it—the decision was final and purely legal, and the objection to that ruling preserved under the circumstances.

We find the reasoning in *Prout v. State,* 311 Md. 348, 358 (1988),[2] *abrogated on other grounds as recognized in Beales v. State*, 329 Md. 263, 269 (1993), instructive here. In that case, the Court of Appeals held that a trial court's ruling on a motion *in limine* to exclude evidence of a witness's prior conviction for impeachment purposes itself preserved the issue for appeal because that *in limine* ruling was intended to be a final ruling on the matter. The trial court ruled that the witness's solicitation and prostitution convictions were inadmissible for impeachment purposes, and then instructed defense counsel to not ask the witness any questions regarding them. *Id.* The trial court's decision here was equally final: as in *Prout*, the trial court ruled that Mr. Clark's manslaughter conviction was not an impeachable offense because it was neither an infamous crime nor a crime that bore on credibility, and then prohibited defense counsel from inquiring about it or its consequences. Accordingly, we conclude that the ruling was intended to be the final word on the matter and no further objections or attempts to offer the evidence again by defense counsels were necessary. "To require defense counsel, under these circumstances, to make a more specific proffer or to offer the evidence again during the trial in order to preserve the issue for appellate review is unwarranted and would unduly interfere with the orderly progression of the trial." *Simmons v. State*, 313 Md. 33, 38 (1988).

---

[2] *See Reed v. State*, 353 Md. 628, 637–38 (1999) ("When motions *in limine* to exclude evidence are granted, normally no further objection is required to preserve the issue for appellate review." (citing *Prout,* 311 Md. 348 , 356); *see also Leeks v. State*, 110 Md. App. 543, 553 n.3 (1996) (noting that the issue was preserved for appellate review because the trial court ruled *in limine* to exclude evidence of a witness' prior conviction for impeachment purposes even though no objection was made during trial).

We also disagree that Messrs. Cummings and Lubin failed to preserve the issue for appellate review because their counsel neither joined in Mr. Hall's counsel's preliminary effort to introduce the prior convictions nor objected to the court's decision to preclude it. Mr. Hall's counsel stated specifically that it was "our" (the defense's) theory that Ms. Ray and Mr. Clark were lying about having a gun because they knew that Mr. Clark's prior conviction prohibited him from possessing one. And although only Mr. Hall's counsel initially addressed the prior conviction, the State included the entire defense when it suggested to the court that "they should be prevented from mentioning it." Mr. Lubin's counsel attempted to explain to the court how asking Mr. Clark about the prior conviction addressed Mr. Clark's motive to lie. Ultimately, Messrs. Cummings and Lubin were bound by the same rulings precluding cross-examination with Mr. Clark's prior manslaughter conviction as Mr. Hall, and were left with no other option but to comply with those rulings. Additional objections might have eliminated any doubt, but given the categorical nature of the court's ruling, we find the issue preserved.

2. **The court erred in precluding the defense from introducing Mr. Clark's prior manslaughter conviction for impeachment.**

On the merits, Mr. Clark's manslaughter conviction *was* fair game for cross. Maryland Rule 5-609 allows impeachment with convictions for crimes that are infamous or that bear on the witness's credibility:

> (a) **Generally**. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime

12

relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness

(b) **Time Limit**. Evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction.

Courts undertake a three-part analysis when determining whether to admit prior convictions under Rule 5-609:

> First, subsection (a) sets forth the "eligible universe" for what convictions may be used to impeach a witness's credibility. This universe consists of two categories: (1) "infamous crimes" and (2) "other crimes relevant to the witness's credibility." Infamous crimes include treason, common law felonies, and other offenses classified generally as *crimen falsi.* If a crime does not fall within one of the two categories, then it is inadmissible and the analysis ends. *This threshold question of whether or not a crime bears upon credibility is a matter of law.* If a crime falls within one of the two categories in the eligible universe, then the second step is for the proponent to establish that the conviction was not more than 15 years old, that it was not reversed on appeal, and that it was not the subject of a pardon or a pending appeal. Finally, in order to admit a prior conviction for impeachment purposes, the trial court must determine that the probative value of the prior conviction outweighs the danger of unfair prejudice to the witness or objecting party. This third step is clearly a matter of trial court discretion.

*State v. Westpoint*, 404 Md. 455, 477–78 (2008) (emphasis added) (citation omitted).

The State concedes, correctly, that manslaughter is an infamous crime. *See Hairston v. State*, 68 Md. App. 230, 235 (1986) ("Because manslaughter is a felony, it is necessarily an infamous crime." (citations omitted)). It responds by reprising its preservation argument, *i.e.*, that the court was precluded from making a threshold finding of "probativeness and potentially unfair prejudice for *all* convictions used to impeach

13

credibility." *Beales*, 329 Md. at 270 (emphasis in original). As we see it, though, the trial court's conclusion that manslaughter was not an impeachable offense truncated the analysis, and the error lies there. That decision prevented the court from assessing the relative probativity and prejudice of the manslaughter conviction, and precluded any exercise of the court's discretion to let it in or keep it out on that basis.

**B. The Trial Court Erred In Prohibiting Cross-Examination Regarding Ms. Ray's And Mr. Clark's Purported Motive To Testify Falsely.**

Messrs. Hall and Cummings contend on appeal that the trial court erred in prohibiting their counsel from cross-examining Ms. Ray and Mr. Clark about their purported motive to testify falsely. This issue is a variant of the first because their alleged motive to lie flows from Mr. Clark's manslaughter conviction: his conviction precludes him from possessing a weapon, and so, the theory goes, he has a motive to lie about the origins of the weapon found in the apartment. The State argues that only Mr. Hall's contention is preserved for appeal because Mr. Cummings's counsel did not object to the trial court's ruling on limiting the defense's cross-examination. For the same reasons discussed above, we find the issue preserved and hold that the trial court's ruling prevented the jury from considering the possibility that Ms. Ray and Mr. Clark had a motive to testify falsely, which in turn deprived these defendants of a fair trial.

A criminal defendant's right to confront witnesses is guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. *Pantazes v. State*, 376 Md. 661, 680 (2003). "Central to that right is the opportunity to cross-examine witnesses." *Id.* The defendant's right to cross-examine is not

14

limitless, and "[a] trial court may impose reasonable limits on cross-examination when necessary for witness safety or to prevent harassment, prejudice, confusion of the issues, and inquiry that is repetitive or only marginally relevant." *Martinez v. State*, 416 Md. 418, 428 (2010) (citation omitted). The court, however, "must allow a defendant wide latitude to cross-examine a witness as to bias or prejudice," and "[o]nly when defense counsel has been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witnesses, is the right of confrontation satisfied." *Id.* (internal quotations and citation omitted). Indeed, the Supreme Court has instructed that the "partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

"In reviewing the trial court's evidentiary rulings, we recognize that the court has broad discretion in the conduct of trials, and we will not disturb that exercise of discretion unless the court has clearly abused it." *Churchfield v. State*, 137 Md. App. 668, 682 (2001) (citation omitted). "The appropriate test to determine abuse of discretion in limiting cross-examination is whether, under the particular circumstances of the case, the limitation inhibited the ability of the defendant to receive a fair trial." *Martin v. State*, 364 Md. 692, 698 (2001).

The defendant's opportunity to cross-examine a witness when the State's case rests on credibility is crucial to a fair trial, particularly when the witness may have a motive to testify falsely. "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis,* 415 U.S. at 316. In the present

case, the defense was not permitted to explore clear reasons that two central State witnesses might have had to testify falsely. The truthfulness of Ms. Ray's and Mr. Clark's testimony was a key element in the State's case against Messrs. Hall and Cummings, and the jurors, as sole judges of the credibility of witnesses, "were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on the [witnesses'] testimony." *Id.* at 317.

We disagree with the State that the defense failed to demonstrate that the information was "relevant and material," and find the two cases on which it relies—*Pantazes* and *Washington v. State*, 180 Md. App. 458 (2008)—distinguishable. In *Pantazes*, the trial court had precluded the defense from cross-examining a State witness about the fact that she had previously lied about her involvement in a robbery because the defense had not shown a reasonable factual basis that she had actually participated in the alleged misconduct. *Pantazes*, 376 Md. at 679. In *Washington*, the trial court prohibited the defense from cross-examining a police officer about the fact that his unit was under investigation because there was no proffer that that particular officer was biased or involved in any misconduct. 180 Md. App. at 489. In this case, there is no dispute that Mr. Clark had a prior manslaughter conviction, and thus no question that Mr. Clark was prohibited from possessing a gun. And the defense also proffered a credible rationale why Ms. Ray might testify falsely to protect Mr. Clark: he is the father of her children, they live together, and have known each other for many years.

Rather than considering the *witnesses*' motives to testify falsely, the trial court focused on whether the *evidence* up to that point in the trial showed that Mr. Clark in fact

16

possessed a gun. The defendants' theory of the case was that this incident was a drug deal gone wrong, not an attempted robbery. As part of their defense, they sought to argue that besides the obvious reason of not wanting the police to know that Mr. Clark was a drug dealer, Mr. Clark and Ms. Ray fabricated a story because Mr. Clark's prior manslaughter conviction prohibited him from possessing a gun. In order to show this motivation to testify falsely, the defense needed to introduce into evidence Mr. Clark's prior manslaughter conviction and cross-examine both Ms. Ray and Mr. Clark regarding their knowledge that the conviction prohibited Mr. Clark from possessing a gun. There was also physical evidence to support the defense's theory that Mr. Clark was involved in drug trafficking and possessed a gun: a substantial amount of drugs and drug paraphernalia were found in the apartment as well as a box of ammunition and a gun, although Mr. Clark testified that he took the gun from Mr. Manigault. In short, there was a solid factual foundation for the defense's inquiry into Ms. Ray's and Mr. Clark's bias, and the inquiry was not outweighed by the danger of confusion to the jury or unfair prejudice to the State. *See Calloway v. State*, 414 Md. 616, 637 (2010) (holding that the trial court committed reversible error in limiting defense counsel's cross-examination of the State's key witness regarding his expectation of leniency from the State); *Martinez*, 416 Md. at 431–32 (2010) (holding that the trial court violated the defendant's constitutional right to confront a witness when it prohibited the defendant from cross-examining the witness as to potential bias).

As a result, we reverse all three appellants' convictions and remand for further proceedings. But because Messrs. Cummings and Lubin challenge the sufficiency of the

17

evidence supporting their convictions, and could not be re-tried if they're right, we turn to those arguments next.

**C. The Evidence Was Sufficient To Sustain Mr. Lubin's Convictions.**

Mr. Lubin was convicted of first-degree burglary, armed robbery, conspiracy to commit armed robbery and first-degree burglary, and related offenses. He contends that the evidence was insufficient to sustain his convictions because there was no evidence of his intent to commit robbery, nor any evidence that he was aware of the plans of Mr. Hall and Mr. Manigault or that he conspired with them to do anything criminal. He claims that the evidence was sufficient for the jury to find that Mr. Manigault and Mr. Hall intended, and did in fact, commit an assault, but that "the State had little more than a hunch that robbery was the motive." The State counters, and we agree, that it produced ample circumstantial and direct evidence of a robbery scheme that ultimately led to the assault and commission of the remaining crimes, and that the State produced evidence specifically linking Mr. Lubin to the conspiracy.

Before addressing the sufficiency of the evidence for Mr. Lubin's robbery conviction, we note that the record reveals that the jury convicted Mr. Lubin of attempted armed robbery, not armed robbery, and that entry of the conviction for the latter charge was nothing more than a clerical error. The error may have stemmed from Count 8 of the indictment, which charged Mr. Cummings with "UNLAWFULLY AND FELONIOUSLY, WITH A DANGEROUS WEAPON [DID] ATTEMPT TO ROB RAYMOND CLARK" but then in parenthesis, stated "**ARMED ROBBERY**." (Emphasis in original.) During the sentencing hearing, the trial court sentenced Mr. Lubin to Count 8 "armed robbery," rather

than attempted armed robbery. This led to a clerical error—entry of a conviction for armed robbery rather than attempted armed robbery. And it was nothing more than that: the indictment charged Mr. Lubin with *attempted* armed robbery, not armed robbery; the evidence presented at trial and the State's theory of the case was that the co-defendants were guilty of attempted armed robbery; the trial court instructed the jury on attempted armed robbery; the verdict sheet listed attempted armed robbery; and lastly, the jury returned a guilty verdict for attempted armed robbery, not robbery. As such, we need only address whether the evidence sufficed to support a conviction for attempted armed robbery.

The standard of review for determining whether sufficient evidence exists to support a conviction on appeal is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Coleman*, 423 Md. 666, 672 (2011) (quoting *Facon v. State*, 375 Md. 435, 454 (2003)). Our concern is not whether the verdict is in accord with what appears to be the weight of the evidence, "but rather is only with whether the verdicts were supported with sufficient evidence—that is, evidence that either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *State v. Albrecht*, 336 Md. 475, 479 (1994). "We 'must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether the appellate court would have chosen a different reasonable inference.'" *Cox v. State*, 421 Md. 630, 657 (2011) (alterations in the original) (quoting *Bible v. State*, 411 Md. 138, 156 (2009)). And

circumstantial evidence can support a conviction on its own if there is enough to support a finding of guilt:

> Circumstantial evidence is sufficient to sustain a conviction, but not if that evidence amounts only to strong suspicion or mere probability. Although circumstantial evidence alone is sufficient to sustain a conviction, the inferences made from circumstantial evidence must rest upon more than mere speculation or conjecture.

*Corbin v. State*, 428 Md. 488, 514 (2012) (citing *Smith v. State*, 415 Md. 174, 185 (2010)).

At the heart of this case is whether the evidence sufficed to prove a conspiracy to commit armed robbery (because all other crimes stemmed from the conspiracy) and whether there was sufficient evidence to prove Mr. Lubin attempted to commit armed robbery. "A criminal conspiracy is the combination of two or more persons, who by some concerted action seek to accomplish some unlawful purpose, or some lawful purpose by unlawful means." *Savage v. State*, 212 Md. App. 1, 12 (2013) (internal quotations and citation omitted). A conspiracy may be shown through circumstantial evidence, from which a common scheme may be inferred. *Mitchell v. State*, 363 Md. 130, 145–46 (2001). Robbery is defined as "the felonious taking and carrying away of the personal property of another from his person by the use of violence or by putting in fear." *Metheny v. State*, 359 Md. 576, 605 (2000) (citation omitted). "A person is guilty of an attempt when, with intent to commit a crime, he engages in conduct which constitutes a substantial step toward the commission of that crime. . . ." *Townes v. State*, 314 Md. 71, 75 (1988) (citations omitted).

That standard was met easily here. Ms. Ray testified that Messrs. Manigault and Hall were wearing ski masks and brandishing guns when they forced her into the apartment.

20

Mr. Clark testified that he heard Ms. Ray screaming hysterically and then ran to the living room where he saw several masked men carrying guns, that he wrestled a gun away from Mr. Manigault, and that he and Mr. Hall exchanged gunfire. Anthony Walls, an eyewitness, testified that he saw four men (one of whom was independently established to be Mr. Lubin) drive into the apartment complex, park on the other side of the courtyard from where Ms. Clark and Mr. Ray's apartment was located, talk for a few minutes before anyone got out of the car, and then saw one of them hand Mr. Manigault a gun, which he put in his pocket. Mr. Hall testified that Mr. Lubin was with him the night of the incident and that he asked Mr. Lubin to help him carry Mr. Manigault to the car after Mr. Manigault had been shot. Firefighter Hakim Carroll testified that Mr. Lubin was one of the men who brought Mr. Manigault to the fire station and that Mr. Lubin fled the area. The State also presented physical evidence of an attempted armed robbery and an assault: police recovered two black face masks from the SUV, twenty shell casings from two different guns from the apartment, and zip ties that, the State argued, Mr. Manigault had brought with him as part of a plan to restrain Ms. Ray and Mr. Clark during the robbery. And the police did not recover any counterfeit money, which undermined Mr. Hall's version of events.

This evidence could readily have permitted a rational trier of fact to conclude that Mr. Lubin conspired with Messrs. Hall, Cummings, Manigault to commit armed robbery and the other offenses. Although there was no testimony regarding a taking of or a demand for property, which is required to prove robbery, *Metheny*, 359 Md. at 605, there was evidence sufficient to permit a reasonable inference that the men attempted to commit

21

armed robbery based on the fact that Messrs. Manigault and Hall wore ski masks and brandished guns when they forced their way into Ms. Ray and Mr. Clark's apartment.

**D. The Evidence Was Sufficient To Sustain Mr. Cummings's Convictions.**

Mr. Cummings also contends that the evidence is not sufficient to sustain his attempted robbery conviction because there was no indication that the taking of property was the motive behind the force applied to the victim, and that a dangerous weapon conviction cannot stand in the absence of an actual taking.

We can dispose easily of Mr. Cummings's argument that the evidence did not suffice to convict him of attempted robbery. In addition to the evidence we detailed in rejecting Mr. Lubin's insufficiency claim, specific evidence connected Mr. Cummings to the conspiracy to commit armed robbery. Mr. Hall testified that Mr. Cummings was with him and the others on the night of the incident, that Mr. Cummings drove the SUV when they fled the apartment complex, and that he jumped out of the car on the way to the fire station for fear of violating probation and parole if he went to the station with them. The State also introduced GPS monitoring data *collected from the ankle bracelet he was wearing* that placed Mr. Cummings at or near the apartment complex at the time the shooting took place, and these data showed that he then returned home around the time that Mr. Hall testified that Mr. Cummings got out of the SUV and said he was going home. When viewed in the light most favorable to the State, there was abundant evidence on which the jury could infer that Messrs. Cummings, Lubin, Hall, and Manigault conspired to rob Ms. Ray and Mr. Clark.

22

We can dispose as well of Mr. Cummings's argument that the evidence could not sustain an armed robbery conviction because there was no evidence of an actual demand for or taking of property. Like Mr. Lubin's conviction for armed robbery discussed above, the jury convicted Mr. Cummings of *attempted* armed robbery, not armed robbery, and the entry of the conviction for the latter was nothing more than a clerical error. And for the reasons already mentioned, the evidence amply sustained a conviction for attempted armed robbery.

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED AND CASES REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. PRINCE GEORGE'S COUNTY TO PAY COSTS.**